**UTAH STATE UNIVERSITY OF AGRICULTURE AND APPLIED SCIENCE, Plaintiff-Appellant,**

v.

**BEAR, STEARNS & CO., et al., Defendants-Appellees.**

Nos. 75–1854 to 75–1856, 75–1858, 75–1860 to 75–1862 and 76–1330.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Sept. 23, 1976.

Decided Jan. 24, 1977.

Rehearing Denied March 18, 1977.

David L. Wilkinson, Special Asst. Atty. Gen., Salt Lake City, Utah (Vernon B. Romney, Atty. Gen., Salt Lake City, Utah, was with him on the brief), for plaintiff-appellant.

Harold G. Christensen, Parker M. Neilson and Keith E. Taylor, Salt Lake City, Utah (Daniel M. Allred, Krege B. Christensen, Parsons, Behle & Latimer, Salt Lake City, Utah, Dawson, Nagel, Sherman & Howard, Denver, Colo., Worsley, Snow & Christensen, R. Brent Stephens, Craig S. Cook and Alan E. Walcher, Salt Lake City, Utah, were with them on the briefs), for defendants-appellees.

Before McWILLIAMS, BREITENSTEIN and BARRETT, Circuit Judges.

BREITENSTEIN, Circuit Judge.

These eight companioned appeals are from judgments dismissing actions brought by plaintiff-appellant, Utah State University, against various brokers to recover losses sustained in securities transactions. The claims are based on alleged violations of certain statutes, administrative regulations, and rules of private organizations of securities dealers. We affirm.

Utah State University of Agriculture and Applied Science, USU, is a corporation existing under the constitution of the State of Utah and operates at Logan, Utah, as a land grant university. Defendants are all brokerage firms organized under the laws of various states other than Utah. Each defendant is a member of the New York Stock Exchange, NYSE, the American Stock Exchange, AMEX, and the National Association of Security Dealers, NASD.

Jurisdiction is based on § 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa.

In furtherance of its securities investment program, the governing body of USU on January 20, 1972, adopted a resolution which said:

(1) USU "is authorized and empowered to open and maintain an account with any broker" who is a member of a major security exchange or of NASD.

(2) The authorization covers "the purchase, trade and sale, long or short, [of] * * * stocks, bonds and securities of every nature on margin or otherwise * * *."

(3) Two named officers, Broadbent and Catron, have power to act under the resolution for USU.

(4) "[T]his resolution shall be and remain in full force and effect until written notice of the revocation hereof shall be delivered to the brokers."

Between February, 1972, and March, 1973, Catron opened accounts with numerous brokerage firms and purchased millions of dollars worth of securities. Catron, a well-educated man with business and accounting experience, had been a licensed securities salesman. He became the Controller of USU in July, 1970.

In the Spring of 1972, the Utah State Auditor's Office notified Catron that later in the year an audit would be made of the USU investment program. To improve the program's cash flow picture, Catron engaged in a series of transactions in which he sold stock through one broker and immediately repurchased the same stock utilizing another broker. By this operation he received immediate payment for the stock sold and did not have to pay for the stock bought until its delivery.

In December, 1972, an independent auditing firm employed by USU questioned the legality of the USU stock purchase program. In the same month local newspapers reported the belief of an assistant attorney general of Utah that the USU stock purchases were illegal. On December 4, 1972, USU instructed Catron to stop purchasing securities on its behalf. Catron did not stop

the USU security transactions until March, 1973, when USU sent to each brokerage firm a written revocation of Catron's authority. On December 23, 1975, the Supreme Court of Utah held that USU did not have the power to purchase common stock with its public funds. See *First Equity Corporation of Florida v. Utah State University*, Utah, 544 P.2d 887.

In each of the eight appeals before us, USU is the plaintiff-appellant. The following list shows the defendant-appellee in each case:

```
No. 75-1854 - Bear, Stearns & Co.

No. 75-1855 - Blyth Eastman Dillon & Co.

No. 75-1856 - Bosworth, Sullivan & Company

No. 75-1858 - Hornblower & Weeks - Hemphill,
 Noyes, Inc.

No. 75-1860 - Shearson, Hammil & Co.

No. 75-1861 - Sutro & Co.

Nos. 75-1862- Merrill Lynch, Pierce, Fenner &
 76-1330 Smith, Inc.
```

USU sued the brokers to recover its losses on stocks purchased and sold and to recover the commissions paid to brokers on all stock transactions regardless of whether USU received a loss or gain. The complaint asserts federal law claims which may be grouped in three categories:

1—Violations of fair practice and suitability rules of NYSE, AMEX, and NASD.

2—Violations of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and of Rule 10b–5, 17 C.F.R. § 240.10b–5, promulgated thereunder.

3—Violations of Federal Reserve System Regulation T, 12 C.F.R. Part 220, promulgated pursuant to 15 U.S.C. § 78g(a).

The complaints also allege various pendent claims under state laws.

In the Sutro case no Regulation T claim is presented. The two appeals relating to Merrill Lynch will be discussed separately. All defendants except Merrill Lynch filed motions to dismiss the pertinent complaint.

By order, the court allowed the parties "to file affidavits and other supporting ma-

terial" so that the motions to dismiss could be considered as motions for summary judgment under Rule 12(b), F.R.Civ.P. Many affidavits were filed on each side. The deposition of Catron was presented. The court dismissed the counts based on the NASD, NYSE, and AMEX rules for failure to state a claim in that violations of exchange and association rules do not give rise to a private cause of action. With regard to the Rule 10b–5 claims the court held that violations of the NYSE, AMEX, and NASD suitability rules did not give rise to a Rule 10b–5 claim and hence, the complaint did not state a cause of action under Rule 10b–5.

As to the claims based on Regulation T, the court held that the regulation did not give rise to a private cause of action and hence failed to state a claim. The court also held that summary judgment was proper on the Regulation T claims because USU was in pari delicto. On the pendent claims, the court, in dismissing, noted the pendency of state court actions involving those claims. No questions are raised on these appeals regarding the dismissals of the pendent claims.

*The NASD, NYSE, and AMEX Rules.*

 Article III, § 1, of the NASD Rules of Fair Practice requires a member to "observe high standards of commercial honor and just and equitable principles of trade." Section 2 of the same Article requires a member in recommending the purchase of a security to a customer to have reasonable grounds for believing that the security is suitable for the particular customer. This proscription is often called the "Suitability Rule."

NYSE Rule 405, called the Know-Your-Customer Rule, and the similar AMEX Rule 411 require that a member use "due diligence to learn the essential facts relative to every customer, order" or account.

The Securities Exchange Act of 1934 requires the registration of national securities associations and exchanges. The rules of these self-regulatory bodies must be approved by the Securities and Exchange Commission, SEC. See 15 U.S.C. § 78o–3(b) and § 78f(b). The areas and concerns which the rules must cover are statutorily imposed. Ibid. SEC must approve any changes in the rules. 15 U.S.C. § 78s(b). SEC can "abrogate, add to and delete from" any of the self-regulatory rules in order to further the purposes of the Act. 15 U.S.C. § 78s(c). Brokers who are not members of NASD have similar rules imposed on them by SEC regulation. For example, forms of NASD's Rules of Fair Practice, Art. III, §§ 1 and 2 which are involved in these appeals, are imposed on non-members by 17 C.F.R. §§ 240.15b10–2 and 240.15b10–3.

*Colonial Realty Corporation v. Bache & Co.*, 2 Cir., 358 F.2d 178, cert. denied 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56, rejected an implied cause of private action for violation of Art. III, § 1, of the NASD rules. The court recognized that the Securities Exchange Act of 1934 did not specifically authorize actions for violation of private association rules. The court said that an implied cause of action could be established by the courts to effectuate the congressional purpose and federal policy behind the 1934 Act. In so holding, the court relied on *J. I. Case v. Borak*, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423. The court in *Colonial Realty* said that it would recognize an implied cause of action where the rule violated; (1) amounted to a substitute for an SEC regulation, and (2) established an explicit duty unknown to the common law. 358 F.2d at 182.

*Buttrey v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 Cir., 410 F.2d 135, cert. denied 396 U.S. 838, 90 S.Ct. 98, 24 L.Ed.2d 88, recognized an implied cause of action under NYSE Rule 405. The court said that determination of whether violation of a rule is actionable depends on whether its design is "for the direct protection of investors" and said one of the functions of Rule 405 was the protection of the public. Ibid. at 142. Critics of the *Buttrey* decision have pointed out that Rule 405 was not promulgated to protect customers from shady brokers but rather to protect brokers from unscrupulous customers. This criticism has

its basis in SEC, Report of Special Study of Securities Markets of the Securities and Exchange Commission, H.R.Doc.No.95, 88th Cong. 1st Sess., pt. 1, at 316.

In *Buttrey* the court did not say that an alleged violation of Rule 405 was per se actionable. 410 F.2d at 142. The complaint there under consideration alleged fraudulent conversion of securities. The court said, Ibid. at 143, that "the facts alleged here are tantamount to fraud * * *, thus giving rise to a private civil damage action."

The district courts of the Tenth Circuit are split on whether an implied cause of action may be based on NASD or stock exchange rules. No implied cause of action is recognized in *Thompson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, W.D.Okl., 401 F.Supp. 111, and in *Utah v. duPont Walston, Inc.*, D.Utah, CCH Fed.Sec.Rptr. ¶ 94,-812 at p. 96,713. A contrary result is reached in *Geyer v. Paine, Webber, Jackson & Curtis, Inc.*, D.Wyo., 389 F.Supp. 678.

In *Ocrant v. Dean Witter & Company, Inc.*, 10 Cir., 502 F.2d 854, by way of dicta, and citing *Buttrey*, we recognized that "in an appropriate case, violations of exchange rules designed for customer protection might give rise to a private cause of action * * *." Ibid. at 858.

The statement in *Ocrant* is pertinent. In an appropriate case a rule violation may give rise to a private cause of action. At the same time there is good reason to limit the scope of potential liability of brokers for rule violations. The advantages of self-regulation in the securities field may not be denied. Self-regulation obviates need for a more massive governmental bureaucracy and a detailed and rigid regulation of the entire securities field. See S.Rep. No. 1455, 75th Cong. 3d Sess., 3–5, and H.R.Rep. No. 2307, 75th Cong. 3d Sess. 4–5. See also *Silver v. New York Stock Exchange*, 373 U.S. 341, 352, 83 S.Ct. 1246, 10 L.Ed.2d 389. For the system to work effectively, the self-regulatory bodies must be encouraged to take the initiative in exploring and formulating new rules to govern the conduct of their members. Such action is doubtful if the promulgation of every new rule has the potential of creating massive liability for the members.

No provision of the Securities Exchange Act creates an express civil remedy for violation of an exchange or association rule. In *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668, the Supreme Court rejected a private implied claim for violation of SEC Rule 10b–5. The Court said, Ibid. at 207, 96 S.Ct. at 1388, that: "In each instance that Congress created express civil liability in favor of purchasers or sellers of securities it clearly specified whether recovery was to be premised on knowing or intentional conduct, negligence, or entirely innocent mistake." With reference to Rule 10b–5, the Court said, Ibid. at 206, 96 S.Ct. at 1387 that: "There is no indication that Congress intended anyone to be made liable for such practices unless he acted other than in good faith."

Applying the statements of the Court to claims asserted under association and exchange rules, something more than mistake or negligence must be shown. The allegations of the complaints are that the stocks were too speculative for USU, did not have earnings records showing suitability for purchase by USU, the stocks were purchased in too great quantities, the stocks were too thinly traded, and the purchase of the stocks by USU was ultra vires. No complaint has an allegation of fraud or bad faith. The allegations, taken separately or together, are not tantamount to fraud.

The argument that the brokers are liable because they should have known that the stock purchases by USU were illegal under Utah law does not impress us. USU seeks to take advantage of its own wrongful acts. It would retain the profits which it has made and recover from the brokers the losses which it has sustained. An ultra vires act of an institutional customer may not be converted into a wrongful act of a broker. The fact that the brokers did not foresee the decision of the Utah Supreme Court made three years after the transactions in question does not establish fraud, or

conduct tantamount to fraud, on the part of the brokers.

The complaints show that USU had a large stock portfolio covering thousands of shares in many diverse companies. The stocks were bought and sold through numerous brokers. No claim is made of over-reaching, misrepresentation, manipulation or deception. The allegations of unsuitability for an institutional investor such as USU do not establish a claim of fraud or of misconduct tantamount to fraud. We recognize that in an appropriate case there may be an implied cause of action for private redress for violation of association or exchange rules. None of the cases before us are within that category. The trial court properly dismissed the claims based on the NASD, NYSE, and AMEX rules.

*Section 10(b) and Rule 10b–5.*

■ The USU claims under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b–5, 17 C.F.R. § 240.10b–5, promulgated thereunder, are based on its allegations of violations of the NASD, NYSE, and AMEX rules. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 holds that for a private cause of action to lie under § 10(b) or Rule 10b–5, there must be allegations of scienter-intent to deceive, manipulate or defraud. None of the complaints plead scienter. A claim of violations of the NASD, NYSE, and AMEX rules does not take the place of the scienter requirement. Willful or intentional misconduct, or the equivalent thereof, is essential to recovery by USU under either the statute or the regulation. Ibid. at 201, 96 S.Ct. 1375. In the absence of the needed allegations, *Hochfelder* applies and requires the dismissal of the § 10(b) and Rule 10b–5 claims.

*Regulation T.*

■ Section 7 of the Securities Exchange Act of 1934, 15 U.S.C. § 78g, relates to margin requirements. Subsection (a) declares its purpose to prevent "the excessive use of credit for the purchase or carrying of securities." Subsection (c) provides that it is unlawful for a broker "directly or indirectly, to extend or maintain credit * * * for any customer—(1) on any security * * *, in contravention of the rules and regulations which the Board of Governors of the Federal Reserve System shall prescribe * * *." Regulation T was so prescribed. 12 C.F.R. Part 220. In essence it requires a broker to liquidate a customer's order if payment is not received within seven days from the date of purchase. If the customer in good faith agrees to make full cash payment upon delivery of the security, payment may be delayed until delivery which must take place within 35 days of the purchase. 12 C.F.R. § 220.4(c)(5).

The complaints charge that all of the brokers except Sutro & Co. violated the regulation. The complaints have no allegation that USU ever complained to any broker because of delay in delivery and payment. The complaints say that USU maintained a cash account with each broker; that as to specified stocks payment was not made in 35 days; that the broker did not cancel the purchase or liquidate the transaction; and that specified stocks were sold at a loss. The complaints show that some stocks delivered and paid for after the 35-day period had not been sold by USU. The complaints do not allege that any particular stock or stocks, if delivered and paid for within the 35-day period, could have been disposed of without loss. USU wants its money back on stocks which at some undisclosed time were sold at a loss. The sole basis for the USU claims is failure to liquidate the transaction when payment was not made within the Regulation T time limits.

*Pearlstein v. Scudder & German*, 2 Cir., 429 F.2d 1136, cert. denied 401 U.S. 1013, 91 S.Ct. 1250, 28 L.Ed.2d 550, recognized an implied cause of action for a customer under Regulation T. The court said that knowing participation of the customer in the violation did not bar recovery because the statute made it illegal to extend credit but not to receive it. Ibid. at 1141. One judge dissented saying that the purpose of the margin requirements was to protect the overall economy from excessive speculation

and that the protection against a speculator extending himself too thinly was only a by-product. Ibid. at 1147. An implied cause of action under Regulation T was also recognized in *Spoon v. Walston & Co., Inc.,* 6 Cir., 478 F.2d 246, and *Landry v. Hemphill, Noyes & Co.,* 1 Cir., 473 F.2d 365, cert. denied 414 U.S. 1002, 94 S.Ct. 356, 38 L.Ed.2d 237.

In 1970 Congress amended the 1934 Act by adding § 7(f). 15 U.S.C. § 78g(f), which declares that it is illegal for any person to obtain, receive, or enjoy the extension of credit in connection with the purchase of securities contrary to the Federal Reserve System regulations. The Board of Governors of the Federal Reserve to implement the amendment promulgated Regulation X, 12 C.F.R. Part 224, which prohibits any person from obtaining credit when to do so would cause the creditor to violate Regulation T.

The primary purpose of the 1970 amendment was to promote the stability of the securities markets. See 2 U.S.Code Cong. & Admin.News 1970, pp. 4409–4410. The responsibility for compliance with the margin requirements is now on the customer as well as the broker. *Pearlstein, Spoon,* and *Landry* all concerned transactions occurring before the effective date of Regulation X. The statement in *Pearlstein,* 429 F.2d at 1141, that "Congress has placed the responsibility for observing margins on the broker" no longer applies. When the *Pearlstein* case came back to the Second Circuit after remand, the court, after referring to the 1970 amendment and Regulation X, said in *Pearlstein v. Scudder & German,* 2 Cir., 527 F.2d 1141, 1145, n. 3:

> "The effect of these developments is to cast doubt on the continuing validity of the rationale of our prior holding."

Two district court decisions discuss at some length the impact of Regulation X on Regulation T. They are *Bell v. J. D. Winer & Co., Inc.,* S.D.N.Y., 392 F.Supp. 646, and *Freeman v. Marine Midland Bank-New York,* E.D.N.Y., 419 F.Supp. 440. In *Bell* the legislative history of the statutes underlying the two regulations is presented at length and we need not repeat it here. On the facts presented, *Bell* rejected the private implied cause of action asserted under Regulation T. *Freeman* agrees with the reasoning in *Bell,* but allows the private cause of action because the events giving rise to the action occurred before the promulgation of Regulation X. *Neill v. David A. Noyes & Co.,* N.D.Ill., 416 F.Supp. 78, which recognizes a private claim under Regulation T, is not pertinent because the complaint alleged fraud and deceptive conduct. See also *Lantz v. Wedbush, Noble, Cooke, Inc.,* D.Alas., 418 F.Supp. 653, a decision pertaining to the defense of in pari delicto.

Under Regulation X, the broker is subject to criminal penalties and the customer is not, if the credit is obtained innocently and, if upon learning of the violation, he makes payment. This difference in criminal penalties is no reason for imposing civil liability on the broker. The imposition of that liability places the customer in a "heads I win—tails you lose" position. If the stock goes up, he takes his profit. If it goes down, he recovers his loss from the broker. Congress imposed the margin requirements to protect the general economy, not to give the customer a free ride at the expense of the broker.

Because of our conclusion that no private cause of action exists for violations of Regulation T, it is not necessary for us to consider that alternative action of the trial court allowing summary judgment for the defendants on the Regulation T claims.

*The Merrill Lynch Cases.*

Nos. 75–1862 and 76–1330 are USU appeals from judgments in favor of Merrill Lynch. The situation is somewhat different from that presented and considered in the other six appeals. In the *Merrill Lynch* cases the State of Utah was named as a plaintiff in the complaint, but did not join in the notices of appeal.

The initial *Merrill Lynch* complaint differs from the others in that the claim is asserted that the facts alleged in the courts pertaining to the violations of the NASD,

NYSE, and AMEX rules also violate Rule 10b–5. We have held that on the record presented, violation of the association and exchange rules do not give rise to a private cause of action. No different result is mandated by joining the rule violations with a Rule 10b–5 claim. It adds nothing to combine the allegations. The conclusory statement in this complaint that the violations of the exchange and association rules "operated as a fraud and deceit upon the plaintiffs" is insufficient to sustain a claim of fraud or deceit. The circumstances constituting fraud must be stated with particularity. Rule 9(b), F.R.Civ.P.

Merrill Lynch filed a motion for judgment on the pleadings rather than a motion to dismiss. We have no reason to explore the technical differences between a Rule 12(b), F.R.Civ.P., motion to dismiss for failure to state a claim upon which relief can be granted and a Rule 12(c) motion for judgment on the pleadings. Our decision is based upon the legal sufficiency of the complaints. The trial court did not err in granting Merrill Lynch judgment on the pleadings.

The other *Merrill Lynch* complaint differs in that, with regard to Regulation T, reliance is not placed on the 35-day provision but on the provision requiring payment within seven days of purchase. We agree with the trial court that with regard to the customer's right to maintain an implied action against the broker for violation of Regulation T, it makes no difference whether reliance is had on the seven day or the 35-day provision.

The judgments in the appeals noted in the caption are severally affirmed.