**Eloise D. NOLAND, Plaintiff,**

v.

**Zenas N. GURLEY, Merrill Lynch Pierce Fenner & Smith, Inc., a Delaware corporation and E.F. Hutton & Company, a Delaware corporation, Defendants.**

**Civ. A. No. 83–K–247.**

United States District Court,
D. Colorado.

June 15, 1983.

---

■■■■■■■■■■■■■■■■■■

Richard P. Slivka and David L. Dain, Bosworth & Slivka, P.C., Denver, Colo., for plaintiff.

Kevin Michael Shea, Roath & Brega, P.C., Denver, Colo., for Gurley.

Barry Permut, Weinshienk, Miller, Borus & Permut, Denver, Colo., for Merrill Lynch.

Stephen M. Duncan and Thomas D. Birge, Hopper, Kanouff, Smith, Peryam, Terry & Duncan, Denver, Colo., for E.F. Hutton.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

In this action filed under the Securities Exchange Act of 1934, the Securities Act of 1933, the Racketeer Influenced and Corrupt Organizations Act, the Colorado Securities Act and the common law, defendants have moved to strike or dismiss all or certain claims in the complaint. Jurisdiction of this thirteen-claim complaint is alleged under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a); 18 U.S.C. § 1962 and 28 U.S.C. § 1331.

Plaintiff is a resident of the State of Colorado. Defendant Gurley is a resident of the State of Colorado and defendants Merrill Lynch Pierce Fenner & Smith and E.F. Hutton are corporations qualified to do business in the State of Colorado. Plaintiff's complaint alleges that she had no prior knowledge, experience or understanding regarding trading in options when she opened an account with the Colorado Springs office of Merrill Lynch in January, 1975. Defendant Gurley has been a registered broker and was employed by Merrill Lynch from 1975 until March 16, 1976 when he moved to and has remained with defendant Hutton. From March 16, 1976 to August, 1977, Skip Mooney was a registered broker employed by Merrill Lynch. The complaint alleges that at the time of her initial meeting with Gurley plaintiff described her investment needs and objectives as conservative, low risk and income producing. Plaintiff maintains that she explicitly instructed that the General Motors Corporation stock which she then owned could not be threatened or sold and that she wished to preserve the principal. The complaint continues that, by inducing plaintiff to rely on his expertise, Gurley intentionally initiated a scheme and plan to defraud plaintiff. The General Motors stock was delivered to Merrill Lynch and plaintiff was convinced to participate in a series of transactions of purchasing and selling options which Gurley knew to be speculative and high risk. Plaintiff maintains that no explanation of the trading program was provided her and that representations made to her were false and misleading. Plaintiff asserts that the account at all times was controlled by Gurley except for the brief time after Gurley left Merrill Lynch and before plaintiff's account was moved to Hutton. Although not named as a defendant, plaintiff charges that Mooney took

over the account at Merrill Lynch after Gurley left and traded in the account without proper knowledgeable permission of plaintiff, made misrepresentations and omissions to plaintiff and continued the practice of making excessive trades in plaintiff's account. Plaintiff's account eventually followed Gurley in his move from Merrill Lynch to Hutton where the unsuitable and excessively active program and generation of commissions continued. Plaintiff alleges that she received no outside independent investment advice during this time.

The claims for relief allege charges of churning, trading in unsuitable programs, violation of exchange rules, misrepresentations and omissions, controlling person liability and liability of Merrill Lynch and Hutton as aiders and abettors and for failure to supervise Gurley and Mooney, all in violation of federal securities laws. Plaintiff's additional claims for relief are brought for fraudulent acts and omissions in violation of common law, violation of the Colorado Securities Act, breach of fiduciary duty under the common law and the Colorado Fiduciaries Standard for Investments Act, negligence in handling plaintiff's account, a racketeering claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.,* and a claim for liability under both federal and state securities actions based on the doctrine of respondeat superior.

All motions to strike or dismiss are brought under Rules 12(b)(1), 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. Because the arguments in support of these motions are similar, they will be treated together whenever possible.

### PRIVATE RIGHT OF ACTION UNDER SECTION 17(a)

■ Defendants have moved to strike or dismiss all claims based on a private right of action under Section 17(a) of the Securities Act of 1933. Plaintiff's first, second and fourth claims seek relief, in part, under Section 17(a). Plaintiff argues that a private cause of action is properly implied under this section. I have addressed this

issue previously in *Sterling Recreation Organization Co. v. Segal,* 537 F.Supp. 1024 (Col.1982) and *Philbosian v. First Financial Securities Corp.,* 550 F.Supp. 61 (Col.1982) where I found that there is a split in the circuits on the issue and no controlling precedent. In both those cases, ruling on the private right of action question was deferred to permit further discovery to determine whether the conduct that damaged the plaintiff was violative of section 17(a) and not the regulations promulgated under section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b).

The ruling is the same here. Although all parties have analyzed and applied the four-part test of *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975), it is premature to consider the private right of action question until discovery has progressed. All motions to strike or dismiss the section 17(a) claims are denied at this time without prejudice to their being reasserted.

### THE THIRD CLAIM FOR RELIEF

■ Plaintiff's third claim for relief alleges violations of the security exchange rules, particularly rules 405 and 408 of the New York Stock Exchange, Rules 9.7, 9.8 and 9.10 of the Chicago Board of Options Exchange, and Article III, Section 2 of the Rules of Fair Practice of the National Association of Securities Dealers, "and all such other rules and regulations of such bodies designed to prohibit unsuitable recommendations in trading activity and excessive trading in customers' accounts..." This claim is tied to the second claim in the complaint for fraud. Defendants contend that there is no specific cause of action provided in any federal or state statute for violation of these exchange rules and that the rules do not create an independent private cause of action. Plaintiff maintains that she has a right of action based on these rules.

While defendants have cited a myriad of cases that hold there is no private right of action under these rules, *Jablon v. Dean Witter & Co.,* 614 F.2d 677 (9th Cir.1980);

*Gordon v. Dupont Glore Forgan, Inc.,* 487 F.2d 1260 (5th Cir.1973), *cert. denied,* 417 U.S. 946, 94 S.Ct. 3071, 41 L.Ed.2d 666 (1973); *Colonial Realty Corp. v. Bache & Co.,* 358 F.2d 178 (2nd Cir.1966) *cert. denied,* 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966); *Mauriber v. Shearson/American Express, Inc.,* 546 F.Supp. 391 (S.D.N.Y. 1982); *Klitzman v. Bache Halsey Stuart Shields, Inc.,* 499 F.Supp. 255 (S.D.N.Y. 1980); *Russo v. Bache Halsey Stuart Shields, Inc.,* CCH Fec.Sec.L.Rpt. ¶ 99,071 (N.D.Ill.1982), the Tenth Circuit, to which this court must defer, has determined in *Utah State University v. Bear, Stearns,* 549 F.2d 164 (10th Cir.1977), *cert. denied,* 434 U.S. 890, 98 S.Ct. 264, 54 L.Ed.2d 176 (1977) that in some circumstances, there may be a private right of action. The Tenth Circuit analyzed *Colonial Realty, supra,* and the decisions of the district courts of the Tenth Circuit,[1] recognized the split of authority, but, relying on *Ocrant v. Dean Witter & Co., Inc.,* 502 F.2d 854 (10th Cir.1974) said:

"In an appropriate case a rule violation may give rise to a private cause of action. At the same time there is good reason to limit the scope of potential liability of brokers for rule violations. The advantages of self-regulation in the securities field may not be denied. Self-regulation obviates need for a more massive governmental bureaucracy and a detailed and rigid regulation of the entire securities field. For the system to work effectively, the self-regulatory bodies must be encouraged to take the initiative in exploring and formulating new rules to govern the conduct of their members. Such action is doubtful if the promulgation of every new rule has the potential of creating massive liability for the members."

549 F.2d at 168.

After acknowledging that no provision of the Securities Exchange Act creates an express civil remedy for violation of an exchange or association rule, the court indicated that to find a private right of action under these rules an "appropriate case"

might allege more than mistake or negligence. *Id.* An "appropriate case" where there may be an implied cause of action for private redress for violation of association or exchange rules may be one where there are claims of overreaching, misrepresentation, manipulation or deception. The allegations of the instant action go beyond mistake and negligence and allege these other claims. Because the law in the Tenth Circuit and in this area generally is uncertain, the motion to dismiss these claims is denied at this time. Again, it is prudent to await discovery on this action to permit the allegations of fraud, misrepresentation and bad faith to be more fully developed. The motions to strike or dismiss are denied without prejudice.

## THE STATE SECURITIES LAWS CLAIMS

■ Defendants next move to strike or dismiss plaintiff's eighth claim for relief, that alleging state securities action violations under C.R.S.1973 § 11–51–123 and § 11–51–125. Defendants rely on my opinion in *Philbosian v. First Financial Securities Corp.,* 550 F.Supp. 61, 64 (Col.1982), where I held that there was no private right of action under either statute. What the parties in this action could not know is that on February 9, 1983, I amended my ruling in an unpublished opinion and granted plaintiff's motion for modification. In the February opinion, I said:

While there is clearly no private right of action under § 11–51–123, C.R.S.1973, I agree that the statutory language of § 125(2) does so provide."

Defendant's motion to strike or dismiss plaintiff's claims brought under § 11–51–123 are granted but the motions are denied as to the claims under § 11–51–125.

## THE RULE 9(b) MOTION

■ Defendant Hutton has moved to strike or dismiss certain claims for failure

---

**1.** *Thompson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 401 F.Supp. 111 (W.D.Okl); *Utah v. duPont Walston, Inc.,* CCH Fed.Sec.Rptr.

¶ 94,812 at p. 96,713 (D.Utah); *Geyer v. Paine, Webber, Jackson & Curtis, Inc.,* 389 F.Supp. 678 (D.Wyo.).

to plead fraud with particularity under Rule 9(b), F.R.Civ.P. Judge Doyle established the guidelines under Rule 9(b) in his paradigmatic case of *Trussell v. United Underwriters, Ltd.,* 228 F.Supp. 757 (D.Colo. 1964). He said:

Rule 9(b) does not, however, require the pleading of detailed evidentiary matter nor does it require any particularity in connection with an averment of intent, knowledge, or condition of mind. It only requires identification of the circumstances constituting fraud or mistake. That requirement means, in the instant case, that individual plaintiffs should identify particular defendants with whom they dealt directly and from whom they purchased stock; that individual plaintiffs should designate the occasions on which affirmative misstatements were allegedly made to them—and by whom; and that individual plaintiffs should designate what affirmative misstatements or half truths were directed to them and how.

228 F.Supp. at 774.

Plaintiff has sufficiently identified from whom she purchased stock and those who made misstatements or misrepresentations to her. Defendant's point, however, is well taken that plaintiff has not designated the "occasions on which affirmative misstatements were allegedly made" nor has she specified what those misstatements were. Plaintiff shall have 20 days from the date of this order within which to file an amended complaint setting forth with particularity the false or fraudulent statements and misrepresentations.

## THE STATUTE OF LIMITATIONS

■ Defendant Hutton moves to strike or dismiss all claims based on actions which occurred before February 17, 1980 as being barred by the three year statute of limitations, C.R.S.1973 § 13–80–108 and § 13–80–109. Hutton argues that because plaintiff has not alleged active concealment by Hutton of the alleged fraud or plaintiff's inability to discover the fraud despite diligent efforts nor the date upon which the plaintiff became aware of the fraud she has not

shown that she is entitled to any tolling of this three year bar. The motion is granted. Plaintiff's argument that the substance of her complaint sufficiently alleges requirements necessary to permit the tolling of the statute of limitations is rejected. Because I have determined that an amended complaint must be filed, plaintiff can easily correct this deficiency by amendment.

■ It is established in the Tenth Circuit that

"under both Colorado and federal law the limitations period is tolled until the aggrieved party learns of the fraud or should have discovered it by the exercise of reasonable diligence."

*Hackbart v. Holmes,* 675 F.2d 1114, 1120 (10th Cir.1982); *Aldrich v. McCulloch Properties, Inc.,* 627 F.2d 1036, 1041 (10th Cir. 1980). I am hesitant, however, to read between the lines of plaintiff's complaint to determine her knowledge of the alleged fraud or at what point in time, in the exercise or reasonable diligence, she should have been aware of the fraud.

Hutton has additionally noted that plaintiff has failed to allege that her reliance was "justified." Again, this failure can be remedied in the amended complaint. The motion to strike or dismiss on this ground is granted without prejudice.

## THE RICO CLAIM

Defendants have moved for the dismissal of plaintiff's twelfth claim for relief brought under the Racketeer Influenced and Corrupt Organizations Act, Title 18 U.S.C. § 1961, *et seq.,* contending that the purposes and goals of the Act were not intended to include the acts alleged here. Plaintiff disagrees and maintains that she has alleged sufficient facts to sustain a claim under this statute. This is a case of first impression in this circuit although the question has been addressed by district courts in other circuits.

■ RICO as originally conceived was intended as a supplement to the antitrust laws. It is primarily criminal in nature, however, § 1964 provides for a private

right of action for treble damages to any-one injured "by reason of" a violation of the Act. 18 U.S.C. § 1964(c). The aim of the Act was to eradicate organized crime in the United States and to provide remedies and penalties to deal with the unlawful activities of those engaged in organized crime. Judge Tashima of the United States District Court for the Central District of California in *Harper v. New Japan Securities International, Inc.,* 545 F.Supp. 1002 (1982) comprehensively analyzed the policy, mechanics and legislative history of RICO. There is no need to repeat his analysis here. As outlined, the substantive provisions of RICO prohibit the following activities:

(1) The use of income or proceeds from a pattern of racketeering activity by a principal in that activity to acquire an interest in or to establish an enterprise engaged in interstate commerce. § 1962(a)

(2) Acquisition of an interest or a control of an enterprise engaged in interstate commerce through a pattern of racketeering activity. § 1962(b)

(3) Operation of an enterprise engaged in interstate commerce through a pattern of racketeering activity. § 1964(c)

(4) Conspiracy to commit any of the above activities. § 1962(d)

█ The definition of "racketeering activity" of § 1961(1) covers a wide range of state and federal offenses including fraud in the sale of securities. A "pattern of racketeering activity" requires at least two acts of racketeering activity within ten years of each other, one of which must have occurred after the effective date of the statute.[2] § 1961(5). Each act of criminal activity is counted as an act of racketeering activity, even if numerous acts arise out of the same episode. *Harper v. New Japan,* 545 F.Supp. at 1004, citing *United States v. Weatherspoon,* 581 F.2d 595, 601–02 (7th Cir.1978). "Person" under the act "includes any individual or entity capable of holding a legal or beneficial interest in property," § 1961(3), and " 'enterprise' includes any individual, partnership, corporation, associa-

tion, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." § 1961(4).

The legislative history requires a liberal construction to effect the remedial purposes of the Act. Section 904, D.L. 91–452. A Seventh Circuit case upholding the constitutionality of the Act determined that the Act may be applied to others besides members of organized crime. *United States v. Aleman,* 609 F.2d 298 (7th Cir.1979). *Accord, United States v. Bledsoe,* 674 F.2d 647, (8th Cir.1982); *United States v. Campanale,* 518 F.2d 352 (9th Cir.1975); *United States v. Gibson,* 486 F.Supp. 1230 (S.D.Ohio 1980). The Supreme Court in *United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981) ruled that RICO applies to persons who conduct the activities of wholly illegitimate enterprises as well as the primary purpose of coping with the infiltration of legitimate businesses. 101 S.Ct. at 2533.

█ Plaintiff argues that there is no requirement in the Act that a "person" of § 1962 be involved with organized crime. While that is correct, Judge Moran in *Adair v. Hunt International Resources Corp.,* 526 F.Supp. 736 (N.D.Ill.1981) said:

it "is a 'familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers.' " *United Steelworkers of America v. Weber,* 443 U.S. 193, 201, 99 S.Ct. 2721, 2727, 61 L.Ed.2d 480 (1979), quoting *Holy Trinity Church v. United States,* 143 U.S. 457, 459, 12 S.Ct. 511, 512, 36 L.Ed. 226.

I do not disagree with plaintiff's argument that the congressional intent when enacting this statute was that it be broadly construed, however I must concur with *Van Schaick v. Church of Scientology of California, Inc.,* 535 F.Supp. 1125 (Mass.1982); *Adair v. Hunt International, supra; Waterman Steamship Corp. v. Avondale Shipyards, Inc.,* 527 F.Supp. 256 (E.D.La. 1981); *Kleiner v. First National Bank of*

**2.** October 15, 1970.

*Atlanta,* 526 F.Supp. 1019 (N.D.Ga.1981), and *Landmark Savings & Loan v. Loeb Rhoades, Hornblower & Co.,* 527 F.Supp. 206 (E.D.Mich.1981), that § 1964(c) must be interpreted with careful attention to the provision's purposes and

> avoid[ ] a slavish literalism that would escort into federal court through RICO what traditionally have been civil actions in state courts.

535 F.Supp. at 1136.

■ RICO, like the analogous Clayton Act, provides treble damages only for injuries of the type the laws were intended to prevent. *See, Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977). And, as *Van Schaick* and others have determined, the treble damages provision of RICO was designed to protect those whose businesses have been infiltrated and damaged by the offenses § 1962 proscribes. Standing under this statute is narrow and

> The cases in which courts have held that plaintiffs have, or but for some other defect could have, stated a claim under § 1964(c) have involved business persons engaged in conventional commercial activity who allegedly suffered commercial injury.

*Van Schaick,* 535 F.Supp. at 1136, citing *Hellenic Lines, Ltd. v. O'Hearn,* 523 F.Supp. 244 (S.D.N.Y.1981); *Teleprompter of Erie, Inc. v. City of Erie,* W.D.Pa., 537 F.Supp. 6 (1981); *Spencer Companies, Inc. v. Agency Rent-A-Car, Inc.,* Fed.Sec.L.Rep. ¶ 98,361 (D.Mass.1981) and *Parnes v. Heinold Commodities, Inc.,* 487 F.Supp. 645 (N.D.Ill. 1980).

In *Barr v. WUI/TAS, Inc.,* 66 F.R.D. 109, 113 (S.D.N.Y.1975) plaintiffs originally filed an action under the antitrust laws but attempted to amend their complaint to state a claim under the Organized Crime Control Act. The court said:

> An examination of the legislative history of the Act convinces us that the Act was

not intended to create a private cause of action upon facts such as those alleged here... It is clear that it was aimed not at legitimate business organizations but at combatting 'a society of criminals who seek to operate outside of the control of the American people and the governments.' There is no question that defendant cannot be so characterized. Assuming that plaintiffs' allegations have merit, the most that can be said is that defendant's transactions, on the occasion, have been illegal.[3]

■ I find that the purposes and intent of RICO were not directed toward the activities alleged against these defendants. Sufficient remedies are available to plaintiff under the federal and state securities laws and the common law. Plaintiff's twelfth claim for relief is dismissed. RICO is not broad enough to embrace every fraudulent action. *Adair v. Hunt,* 526 F.Supp. at 747; *Waterman v. Avondale,* 527 F.Supp. 256 (E.D.La.1981); *North Barrington Development v. Fanslow,* 547 F.Supp. 207 (N.D.Ill.1980); and *Van Schaick v. Church of Scientology,* 535 F.Supp. at 1138.

> Congress could not have intended to provide treble damages causes of action [sic] to persons whose only injury stems directly from the predicate acts alone. It is simply incomprehensible that a plaintiff suing under the securities laws would receive one-third the damages of a plaintiff suing under RICO for the same injury. While RICO utilizes and sometimes expands upon the offenses designated as racketeering activities, there is no evidence that it was meant to pre-empt or supplement the remedies already provided by those statutes which define a predicate RICO offense.

*Harper v. New Japan,* 545 F.Supp. at 1007. *See also, United States v. Forsythe,* 560 F.2d 1127, 1135 (3rd Cir.1977).

---

**3.** I do not read the statute as narrowly as did the court in *Barr* and do not subscribe to its holding that the repeated and continual use of words such as "syndicate" and "Mafia" indicates that only persons identified with such groups may be prosecuted under RICO. 66 F.R.D. at 113.

## THE PENDENT JURISDICTION QUESTION

Defendants contend that this court should deny its discretionary exercise of pendent jurisdiction over plaintiff's state law claims because there is no independent federal jurisdiction and the claims would require the application of novel theories of state law. These motions are denied.

The doctrine of pendent jurisdiction permits a district court to decide all questions that the case presents. The Supreme Court in *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966), ruled that the power to entertain pendent claims exists when the state and federal claims "derive from a common nucleus of operative fact." *See, Hackbart v. Cincinnati Bengals,* 601 F.2d 516 (10th Cir.1979) *cert. denied,* 444 U.S. 931, 100 S.Ct. 275, 62 L.Ed.2d 188. The doctrine is discretionary and not a matter of right. 383 U.S. at 726, 86 S.Ct. at 1139. Needless decisions of state law should be avoided but in determining whether pendent jurisdiction should be exercised, a court must consider the factors of judicial economy, convenience and fairness to the litigants.

These pendent claims arise from the "common nucleus of operative fact" from which the federal claims derive and are of a nature to justify the expectation of being tried in one judicial proceeding. Further, claims based on fraud, misrepresentation or violation of state securities laws are not "novel" in the law nor to this court. The motions to dismiss or strike plaintiff's seventh, eighth, ninth, tenth and eleventh claims on this ground are denied.

## AIDER AND ABETTOR

Plaintiff's sixth claim for relief seeks liability of Merrill Lynch and Hutton as aiders and abettors under Section 15(b)(4)(E) of the Securities Exchange Act of 1934, 15 U.S.C. § 78*o* (b)(4)(E) for the actions of Gurley and Mooney performed while in their employ. Defendants have moved to strike or dismiss this claim arguing that there is no aider and abettor liability under this statute, that there is no prescribed private right of action for same and no such right of action may be implied. Plaintiff did not address this issue in her brief.[4]

In *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), the Supreme Court explicitly failed to decide whether § 10(b) and Rule 10b–5 may, in appropriate circumstances, give rise to aider and abettor liability. 425 U.S. at 192, n. 7. The Second Circuit in *Rolf v. Blythe, Eastman, Dillon & Co.,* 570 F.2d 38 (1978); *International Investment Trust v. Cornfeld,* 619 F.2d 909 (1980), and *Hirsch v. DuPont,* 553 F.2d 750, 759 (2nd Cir.1977), and the Seventh Circuit in *Brennan v. Midwestern United Life Ins. Co.,* 417 F.2d 147 (7th Cir.1969), *cert. denied,* 297 U.S. 989, 90 S.Ct. 1122, 25 L.Ed.2d 397 (1970) have decided to permit the imposition of aider and abettor liability.

It is clear that one who aids and abets a violation of section 10 of the 1934 Act and Rule 10b–5 may be held civilly liable to one who is injured thereby. *Brennan v. Midwestern, supra, SEC v. First Securities Co. of Chicago,* 463 F.2d 981 (7th Cir.1972); *Buttrey v. Merrill Lynch Pierce Fenner & Smith, Inc.,* 410 F.2d 135 (7th Cir.1969); *Anderson v. Francis I. DuPont & Co.,* 291 F.Supp. 705 (D.Minn.1968); *Hawkins v. Merrill, Lynch, Pierce, Fenner & Beane,* 85 F.Supp. 104 (W.D.Ark.1949). Liability predicated on aiding and abetting may be found on less than actual knowledge and participation in the activity proscribed by section 10 and Rule 10b–5. *Buttrey v. Merrill Lynch,* 410 at 144.

*Hochfelder* recognized that scienter is an element of the § 10b/rule 10b–5 cause of action and also an element of aiding and abetting. This precept has been followed in the Tenth Circuit. *Holdsworth v. Strong,* 545 F.2d 687 (10th Cir.1976). The Supreme

---

**4.** Plaintiff indicated in her brief that due to space and time constraints it was not possible to address all points in her brief in opposition. She requested oral argument on the motions at which time any additional arguments would have been made.

Court recognized that some courts of appeal have held that some type of scienter—i.e. intent to defraud, reckless disregard for the truth, or knowing use of some practice to defraud is necessary to sustain liability in § 10(b) and Rule 10b–5 cases, 425 U.S. 194, n. 12, 96 S.Ct. 1381, n. 12. One such Circuit is the Tenth. *Clegg v. Conk,* 507 F.2d 1351, 1361–62 (1974), *cert. denied,* 422 U.S. 1007, 95 S.Ct. 2628, 45 L.Ed.2d 669 (1975).

Plaintiff's sixth claim for relief alleges that defendants Merrill Lynch and Hutton "knew or should have known" that the brokers were engaged in wrongful conduct. The complaint also alleges "reckless" management of plaintiff's account and "reckless" disregard for the statutory obligation and the exchange rules regarding strict and close supervision of members over employees.

Plaintiff's sixth claim for relief is sufficient to withstand the motions under Rule 12(b)(6) and 9(b), F.R.Civ.P. *See Stevens v. Vowell,* 343 F.2d 374, 379–80 (10th Cir. 1965).

### "CONTROLLING PERSON" CLAIM

■ The fifth claim for relief of the complaint alleges liability of Merrill Lynch and Hutton as "controlling persons" under § 20(a) of the Act, 15 U.S.C. § 78t(a). Defendants have also moved to strike or dismiss this claim arguing that it is not alleged that the purported unlawful acts were committed by Hutton or Merrill Lynch's managing officers and directors but only that the alleged acts were committed by their employee(s). Defendants assert that this claim fails to state a claim and that in essence plaintiff's fifth claim is one based on negligence but 15 U.S.C. § 78t(a) "contains a state-of-mind condition requiring something more than negligence." Again, the language used by plaintiff in the claim is that defendants "knew or should have known" of the possible fraud of Gurley and Mooney, that Hutton and Merrill Lynch were on notice of the propensity or possibility that Gurley was committing fraud but failed to act. The complaint also alleges a lack of good faith on the part of the corporate defendants.

Section 78t(a) says:

Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

The word "controlling" has not been defined by the statute, however, the most obvious manner in which to establish liability as a controlling person is to prove that a person acted under the direction of the controlling person and this is most easily shown by an employer-employee relationship. *Securities and Exchange Commission v. First Securities Company of Chicago,* 463 F.2d 981 (7th Cir.1972); *Rochez Bros., Inc., v. Rhoades,* 527 F.2d 880 (3rd Cir.1975), *cert. denied,* 425 U.S. 993, 96 S.Ct. 2205, 48 L.Ed.2d 817 (1976). However, as the Eighth Circuit observed in *Myzel v. Fields,* 386 F.2d 718, 738 (1967), *cert. denied,* 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968):

The statute is remedial and is to be construed liberally. It has been interpreted as requiring only some indirect means of discipline or influence short of actual direction to hold a 'controlling person' liable.

The controlling person provision of § 20(a) contains a "good faith" defense to liability. In *Carpenter v. Harris, Upham & Co., Inc.,* 594 F.2d 388, 394 (4th Cir.1979), the history of § 20 was discussed and it was noted:

The intent of Congress reflected a desire to impose liability only on those who fall within its definition of control and who are in some meaningful sense culpable participants in the act perpetrated by the controlled person. *Lanza v. Drexel & Co.,* 497 F.2d 1277, 1299 (2nd Cir.1972). The Supreme Court has noted that in

each instance where Congress has created express civil liability in favor of purchasers or sellers of securities, it has clearly specified whether recovery was to be premised on knowing or intentional conduct, negligence or entirely innocent mistake. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 207–209, 96 S.Ct. 1375 [1387–1388], 47 L.Ed.2d 668 (1976). The controlling person provision contains a state-of-mind condition that requires a showing of something more than negligence to establish liability. *Id.* at nn. 27–28. Plaintiff's fifth claim alleges "something more than negligence" and therefore, the motions to strike or dismiss directed to this claim are denied.

## THE RESPONDEAT SUPERIOR CLAIM

██ Arguing that § 20(a), 15 U.S.C. § 78t(a) of the 1934 Act "affords the sole standard of vicarious liability and supplants the doctrine of respondeat superior" [Defendant Merrill Lynch's motion to strike or dismiss, page 4], defendants move to strike or dismiss plaintiff's thirteenth claim for relief. The thirteenth claim is based on the theory of respondeat superior and seeks to hold Merrill Lynch and Hutton vicariously liable for the acts of Gurley and Mooney. Plaintiff resists dismissal of this claim.

Defendants cite prolix authority in support of their argument. *Thomas v. Duralite Co., Inc.,* 524 F.2d 577, 586 (3rd Cir. 1975); *Rochez Bros., Inc. v. Rhoades, supra; Carpenter v. Harris Upham & Co., supra; Christoffel v. E.F. Hutton,* 588 F.2d 665, 667 (9th Cir.1978); *Zweig v. Hearst,* 521 F.2d 1129, 1132–34 (9th Cir.1975); *Hecht v. Harris, Upham & Co.,* 430 F.2d 1202 (9th Cir. 1970); *Lanza v. Drexel & Co.,* 479 F.2d 1277 (2nd Cir.1973); and *Fey v. Walston & Co., Inc.,* 493 F.2d 1036 (7th Cir.1974). Plaintiff responds that only the Ninth Circuit in *Kamen & Co. v. Paul H. Aschkar & Co.,* 382 F.2d 689 (9th Cir.1967) has clearly held that 15 U.S.C. § 78t(a) supplants the common law theory of respondeat superior in all cases brought under that Act and that the other circuits are split but generally support the application of the doctrine. The Tenth Circuit is, together with the First and Eighth Circuits, listed by plaintiff as "unclear."

Section 78bb(a) of Title 15 states in pertinent part:

The rights and remedies provided by this chapter shall be in addition to any and all other rights and remedies that may exist at law or in equity...[5]

Plaintiff interprets this section to support her argument that it was the general intent of the statute to maintain the application of respondeat superior.

The Second Circuit in *Marbury Management, Inc. v. Kohn,* 629 F.2d 705, 712–716 (1980) canvassed the circuit and district court decisions either dealing with or avoiding the issue of whether the statute supplants the doctrine before it concluded that it did not. Judge Dooling's analysis will not be repeated here, but his reasoning is persuasive.

██ My reading of the statute together with an understanding that the legislative intent requiring that the remedial purposes of the Act be liberally construed for the protection of the investor, and based on the Tenth Circuit's pronouncement in *Richardson v. MacArthur,* 451 F.2d 35, 41 (1971) that "[l]iability under § 20(a) is not restricted by principles of agency or conspiracy" leads me to the conclusion that § 20(a) was not intended to supplant the doctrine of respondeat superior. The motions to dismiss this claim are denied. The doctrine of respondeat superior is an agency principle and concerns the scope or course of employment. The "good faith" defense available under § 20(a) is not available under this doctrine which might afford an investor greater protection and relief.

## THE PUNITIVE DAMAGES CLAIM

██ Defendant's last attack is on plaintiff's claim for punitive damages. Defendants move to strike or dismiss this claim

---

**5.** Section 16 of the '33 Act, 15 U.S.C. § 77p, similarly provides that the rights and remedies of the '33 act are additional to pre-existing remedies.

contending that such damages are not available for violations of federal securities laws. This motion is granted as to the federal securities claims only.

The measure of damages recoverable in actions involving misrepresentations in sales of investment securities is "actual damages on account of the act complained of." Securities Exchange Act of 1934, 15 U.S.C. § 78bb. *Richardson v. MacArthur,* 451 F.2d at 43; *deHaas v. Empire Petroleum Co.,* 435 F.2d 1223 (10th Cir.1970); *Esplin v. Hirschi,* 402 F.2d 94 (10th Cir.1968), *cert. denied,* 394 U.S. 929, 89 S.Ct. 1194, 22 L.Ed.2d 459. Whether punitive damages may be awarded on the state or common law claims is not a determination that can be made at this time. Punitive damages on these claims could be imposed under the proper proof at time of trial. For this reason, any claim for punitive damages on a private action under section 10(b) or Rule 10b–5 is dismissed.

It is therefore ORDERED that defendants' motions to strike and dismiss are granted in part and denied in part. Plaintiff shall have 20 days from the date of this order within which to file an amended complaint.