TITSCH PRINTING, INC., Plaintiff,

v.

Merrill G. HASTINGS, Jr. and Priscilla B. Hastings, Defendants.

Civ. A. No. 77–K–910.

United States District Court, D. Colorado.

Sept. 6, 1978.

Robert E. Kendig, Roath & Brega, Denver, Colo., Jeffrey L. Smith, Cohen, Brame, Smith & Krendl, Denver, Colo., for plaintiff.

Hugh J. McClearn, Michael J. Cook, Conover, McClearn, Heppenstall & Kearns, Denver, Colo., for defendants.

## ORDER

KANE, District Judge.

Defendants filed a motion to dismiss this 10b–5 complaint pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. Defendants contend that "the transaction herein did not involve the sale or purchase of a 'security,' but rather the sale of two wholly owned and family operated businesses, of which 'stock' was merely an indicia of ownership." A memorandum brief in opposition to defendants' motion to dismiss was filed on January 3, 1978; a brief in support of the motion to dismiss was filed by defendants on January 20, 1978; a document entitled "Supplementary Information Concerning the Motion to Dismiss" was filed by

the defendants on March 2, 1978; and a hearing on the matter was held on May 15, 1978.

■ At the May 15, 1978 hearing, the court ordered defendants to file a motion for summary judgment if they desired the court to consider matters outside the pleadings. Defendants' original Rule 12(b)(6) motion alleged the failure of plaintiff to state a claim upon which relief can be granted. However, the issue of whether to characterize the purchase agreement in question as the sale of a "security" goes to the subject matter jurisdiction of this court. The Securities and Exchange Act of 1934 only applies to "securities" as defined in that act. *See* 15 U.S.C. §§ 78c(a)(10) and 78j. Normally, it is inappropriate to file a motion for summary judgment when attacking the subject matter jurisdiction of a court. A Rule 56 motion is designed to go to the merits of an action where a Rule 12(b)(1) motion involves a matter in abatement. We shall treat the motion for summary judgment, filed by defendants on May 25, 1978 as a "suggestion" that this court lacks subject matter jurisdiction and will proceed according to Rule 56 of the Federal Rules of Civil Procedure. *See* Wright & Miller, *Federal Practice and Procedure: Civil* § 1350.

The complaint alleges that on or about December 31, 1976, Titsch Printing, Inc. [TPI] purchased from the defendants all of the outstanding stock of Colorado Magazine, Inc. and Mountain Business Publishing, Inc. Plaintiff contends that "stock" is a security within the pertinent statutory definitions. I agree.

The term "security" has been defined in 15 U.S.C. § 78c(a)(10), "unless the context otherwise requires," as

> *any* note, *stock,* treasury stock, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, *investment contract,* voting-trust certificate, certificate of deposit, for a security, *or in general,*

any instrument commonly known as a 'security'; . . . (Emphasis added.)

■ Defendant correctly argues that "the mere fact that the transaction in this case involved the sale of 'stock' does not automatically bring the transaction within the ambit of the antifraud provisions of the Securities Exchange Act."

The United States Supreme Court, in *United Housing Foundation v. Forman,* 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975), made this clear:

> "[I]n searching for the meaning and scope of the word 'security' in the Act[s], form should be disregarded for substance and the emphasis should be on economic reality." *Tcherepnin v. Knight,* 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967).

In determining whether the sale of the housing in that case was in fact the sale of a security within the meaning of the federal securities acts, the court analyzed the definition of a security as set out in the Acts. In part "A," the court rejected the contention that this transaction constituted the sale of "stock" within the meaning of the federal securities laws on the basis that "common sense suggests that people who intend to acquire only a residential apartment in a state-subsidized cooperative, for their personal use, are not likely to believe that in reality they are purchasing investment securities simply because the transaction is evidenced by something called a share of stock. These shares have none of the characteristics 'that in our commercial world fall within the ordinary concept of a security.'" *Id.* at 852, 95 S.Ct. at 206. The court continued:

> Despite their name, they lack what the Court in *Tcherepnin* deemed the most common feature of stock: the right to receive 'dividends contingent upon an apportionment of profits.' 389 U.S. at 339, 88 S.Ct. at 555. . . . Nor do they possess the other characteristics traditionally associated with stock: they are not negotiable; they cannot be pledged or hypothecated; they confer no voting rights in proportion to the number of shares owned; and they cannot appreci-

ate in value. In short, the inducement to purchase was solely to acquire subsidized low-cost living space; it was not to invest for profit. *Id.* at 2060.

■ The court concluded that the use of the word "stock" does not, *ipso facto,* qualify the purchase and sale as a security transaction. The determination is necessarily whether the substance of the matter is a security irrespective of its form and whether the purchaser had the reasonable expectation that what he was buying was a security. Legislative policy as well as substantial justice requires nothing less.

The Colorado Corporation Code sets forth the various attributes of shares of stock issued by a Colorado corporation. C.R.S. 7–4–101 to 7–4–122 (1973). A corporation must file Articles of Incorporation with the Secretary of State before it can qualify as a Colorado corporation. The Articles must specify the characteristics of the stock to be issued. C.R.S. 7–2–102 (1973). Colorado Magazine, Inc. and Mountain Business Publishing, Inc. are corporations which were duly incorporated under Colorado law. The Articles of Incorporation and rights of shareholders holding stock in those corporations are as authorized by the Colorado Corporation Code.

■ Plaintiff contends that the contract involved the sale of stock which carried with it "the right to receive dividends contingent upon an apportionment of profits. The stock is and was negotiable; it can be pledged and indeed was pledged initially as security for the underlying transaction; it confers voting rights in proportion to the number of shares owned; and the stock itself can appreciate in value and later be sold in a block or in portions so as to realize some or all of such appreciation. In short, the stock at issue here *is* stock in the traditional sense. TPI was justified in assuming that the antifraud provisions of the federal securities laws would apply."

In addition, the Stock Purchase agreement provides as its quintessential element the sale of the stock. The stock in this case is not a mere "indicia of ownership" as found in *Chandler v. Kew,* No. 76–1083 (10th Cir. 1977) (Not for Routine Publication), but rather the substance of the purchase itself. An examination of the purchase agreement reveals that the corporate structure was used not only to maintain an existing business but, more importantly, was used to direct additional business enterprises which necessarily required a nexus of management, choses in action, and enterprise as well as the customary elements of inventory, good will and accounts receivable normally transferred in the sale of a store.

Defendants submit that "the ultimate test for determining whether a transaction involves the sale or purchase of a 'security,' 'is whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others.'" They contend that "the sale and purchase in this case lacks the element of a common enterprise, as well as the requirement that profits be derived solely from the efforts of others." Defendants rely on *Forman* to support their argument that the *Howey* test is the definitive test for determining whether a transaction involves the sale or purchase of a "security." They further suggest that this requirement must be met regardless of the nature of the instruments involved. In support of this argument, defendants quote the Supreme Court from *part "B"* of the *Forman* decision:

> We perceive no distinction, for present purposes, between an 'investment contract' and an 'instrument commonly known as a "security."' In either case, the basic test for distinguishing the transaction from other commercial dealings is
>
> > 'whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others.' *Howey,* 328 U.S. 293 at 301, 66 S.Ct. 1100 at 1104, 90 L.Ed. 1244.

This test, in shorthand form, embodies the essential attributes that run through all of the Court's decisions defining a security. The touchstone is the presence of an investment in a common venture

premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others. 421 U.S. at 853, 95 S.Ct. at 2060.

Defendants urge that "the difference between an investment contract and every other instrument commonly known as a security, including stock, is a distinction without a difference." I disagree.

 In *Tcherepnin v. Knight, supra,* the Court held that the federal securities laws were remedial measures that were to be construed liberally in order to effectuate their purposes. Here we have the sale of two going concerns where the purchaser was buying not only the assets of the corporations, but also the liabilities. The balance sheet of a company is a prime consideration that goes into the negotiating and eventual arrival at a purchase price. There is no question that in the event of a material misrepresentation the defrauded purchasers have an action for common law fraud. However, someone who purchases shares of stock, whether it be 1 per cent or 100 per cent, also has the reasonable expectation that he is a beneficiary of protection afforded by the federal securities laws. The policy behind the securities laws supports that expectation.

Defendants reliance on *Forman* is misplaced. The main reason why courts have become so involved in defining the term "investment contract" is because there is no readily available statutory or common law definition of the term. In *S.E.C. v. Howey Co.,* 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1945), the Supreme Court gave that term its present meaning. The court applied a substance over form analysis in determining that this form of investment possessed the substantive characteristics of a security. The court proceeded to distinguish this type of investment from other commercial dealings by resolving that "the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others." 328 U.S. at 301, 66 S.Ct. at 1104. This test has since helped courts determine what is an "investment contract." However, since "stock"

has a traditional and accepted meaning, and is indeed one of the most common forms of securities, it is not necessary for the purchase agreement in this case to meet the test generally used to identify an investment contract. What we have here is statutory as well as common law *stock. See generally Bronstein v. Bronstein,* 407 F.Supp. 925 (E.D.Pa.1967).

The court in *Forman* applied the *Howey* test in part "B" of its opinion when it addressed the issue of whether Co-Op City shares were an "investment contract." The court did not utilize the *Howey* test in part "A" when it determined that the Co-Op City Shares did not constitute "stock." Instead, the court, in its analysis, addressed those characteristics normally associated with the purchase of "stock" in reaching its conclusion. I have done the same. Accordingly,

IT IS ORDERED that defendants' motion for summary judgment is denied. Defendant is directed to answer on or before ten (10) days from the date hereof.