**STERLING RECREATION ORGANIZA-TION CO., Plaintiff,**

v.

**David M. SEGAL and Bruce B. Paul, Defendants.**

**Civ. A. No. 81-K-2013.**

United States District Court, D. Colorado.

April 27, 1982.

John D. Phillips, Jr., Daniel R. Satriana, Jr., Hall & Evans, Denver, Colo., for plaintiff.

Donald Bain, Edmond F. Noel, Jr., Holme, Roberts & Owen, Denver, Colo., for defendants.

KANE, District Judge.

This case involves the sale of a Colorado radio station from the defendants to the plaintiff. The sale was effected by an agreement that transferred all of the station's outstanding capital stock from the defendants to the plaintiff. The plaintiff alleges that the defendants made various negligent and intentional misrepresentations regarding the station in the agreement. Its first claim for relief, securities fraud, is brought under the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a–78kk, and the Colorado Securities Act, C.R.S. §§ 11–51–101—11–51–129. Its other claims for relief are based on negligent misrepresentation, breach of contract and indemnification. This court has jurisdiction to hear the federal claims under 15 U.S.C. § 77v(a), 78aa, and 28 U.S.C. § 1331. It has jurisdiction to hear the remaining claims under *id.* § 1332, because of diversity of citizenship.

The defendants moved to dismiss the first claim for relief, on three grounds. First, they argue that this case does not involve any securities that are covered by the federal and state securities laws. Second, they

allege that the complaint does not contain sufficient allegations of scienter to state a claim under the securities laws. Third, they argue that section 17(a) of the 1933 Act, 15 U.S.C. § 77q(a), one of the sections on which the first claim is based, does not provide for a private right of action. The plaintiffs submitted an answer brief, to which the purchase agreement was attached. However, even without considering this extraneous matter, I conclude that the motion to dismiss should be denied, and therefore I do not convert this motion into one for summary judgment.

## I. APPLICABILITY OF THE SECURITIES LAWS

Section 2(1) of the 1933 Act, 15 U.S.C. § 77b(1), determines the scope of the act by defining "security" as:

> any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, or, in general, any interest or instrument commonly known as a 'security', or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

Section 3(a)(10) of the 1934 Act, 15 U.S.C. § 78c(a)(10), contains a similar definition of "security," as does C.R.S. § 11–51–102(12).[1] I must determine whether the capital stock that was transferred in the present case is included within the definition of securities under these statutes.

The U.S. Supreme Court has stated:

> in searching for the meaning and scope of the word 'security' in the [1933] Act, form should be disregarded for substance and

the emphasis should be on economic reality.

*Tcherepnin v. Knight*, 389 U.S. 332, 336, 88 S.Ct. 548, 553, 19 L.Ed.2d 564 (1967) (citing *S. E. C. v. W. J. Howey Co.*, 328 U.S. 293, 298, 66 S.Ct. 1100, 1102, 90 L.Ed. 1244 (1946)).

Applying the "economic reality" test, Judges Arraj and Finesilver of this court have held that transfers of stock shares that are merely "indicia of ownership" of a corporation will not be subject to the federal securities laws. *Bula v. Mansfield*, Civil Action No. 76–F–871 (May 13, 1977) (CCH Fed.Sec. Law Rep. ¶ 96, 964); *Chandler v. Kew, Inc.*, Civil Action No. 75–A–602 (Dec. 4, 1975) (CCH Fed.Sec. Law Rep. ¶ 96, 965), aff'd, No. 76–1083 (10th Cir. April 19, 1977) (CCH Fed.Sec. Law Rep. ¶ 96,966).

In *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975), the court considered the applicability of the federal securities laws to sales of stock shares in a co-operative housing project. The shares were non-transferable, did not have voting rights, and normally could only be resold to the issuer at the original price. *Id.* at 842, 95 S.Ct. at 2055. Although they were called stock shares, their sole purpose was to be a recoverable deposit on an apartment to be occupied by the purchaser. *Id.* In part II.A. of its opinion, *id.* at 848–51, 95 S.Ct. at 2058–60, the court held that these shares were not "stock," as used by the federal securities laws in defining securities. In part II.B. of its opinion, *id.* at 851–58, 95 S.Ct. at 2060–63, the court held that the shares were not "investment contract[s]," as used by the statutes defining securities. Accordingly, the court held that the federal securities laws did not apply at all to the shares. *Id.* at 859, 95 S.Ct. at 2064.

I considered the applicability of the federal securities laws where a plaintiff had purchased all of the outstanding stock of two corporations from the defendants in

---

1. Interpretations of federal statutes by the U.S. Supreme Court are of course not binding on Colorado state courts in construing Colorado statutes. However, absent any contrary interpretation by Colorado courts, the U.S. Supreme Court's interpretation of a similar federal statute is persuasive.

*Titsch Printing, Inc. v. Hastings*, 456 F.Supp. 445 (D.Colo.1978). There I noted, the contract involved the sale of stock which carried with it 'the right to receive dividends contingent upon an apportionment of profits. The stock is and was negotiable; it can be pledged and indeed was pledged initially as security for the underlying transaction; it confers voting rights in proportion to the number of shares owned; and the stock itself can appreciate in value and later be sold in a block or in portions so as to realize some or all of the appreciation,

*id.* at 448, and concluded that the federal securities laws would apply. In reaching that conclusion, I applied part II.A. of the *Forman* opinion and determined that the shares involved were "stock." *Id.* at 447–48. I also considered part II.B. of the *Forman* opinion, which stated,

the touchstone [of the definition of a security] is the presence of an investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others.

421 U.S. at 852, 95 S.Ct. at 2060. However, I concluded that the supreme court was only addressing the issue of whether a share was an "investment contract" under section 2(1) of the 1933 Act in part II.B. of its *Forman* opinion, *see* 421 U.S. at 851, 95 S.Ct. at 2060, and therefore held that part II.B. did not apply to the definition of "stock." 456 F.Supp. at 449.

The defendants urge that I overrule *Titsch* and apply part II.B. of *Forman* to the definition of "stock," as a majority of other federal courts have done. *See, e.g., Canfield v. Rapp & Son, Inc.*, 654 F.2d 459, 463 (7th Cir. 1981); *Anchor-Darling Industries, Inc. v. Suozzo*, 510 F.Supp. 659, 662–66 (E.D.Pa.1981). In the absence of controlling precedent, I decline to do this. I thought when I decided *Titsch*, and I still think today, that the supreme court only intended part II.B. of its Forman opinion to apply to the definition of an "investment contract," and not to the definition of "stock."

■ Because the present transfer agreement did not involve an investment where profits were to be derived from the "entrepreneurial or managerial efforts of others," no investment contract was involved. However, on the record before me I cannot determine whether "stock," as defined by the 1933 Act, was involved. I do not know whether there was a "right to receive dividends contingent upon an apportionment of profits." I do not know whether the stock was negotiable, whether it conferred voting rights, or whether it could appreciate in value. If the stock carried with it many of these rights, then its transfer was subject to the securities laws. On the other hand, if the shares were merely "indicia of ownership" of the corporation, then the securities laws will not apply. While these issues can probably be decided on an appropriate motion for partial summary judgment, they cannot be decided on a motion to dismiss when the complaint does not contain the relevant factual allegations.

## II. PLEADING OF SCIENTER

■ The parties do not dispute that scienter, i.e., intent to deceive, manipulate or defraud, is an essential element to a claim of violation of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and of SEC Rule 10b–5, 17 C.F.R. § 240.10b–5. *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193–214, 96 S.Ct. 1375, 1380–1391, 47 L.Ed.2d 668 (1976). The present complaint alleges that the defendants knew or should have known that the radio station to be sold was making various concealments and misrepresentations to the Federal Communications Commission, that the defendants misrepresented to and concealed from the plaintiffs various details regarding the radio station's ground system, and that the defendants committed knew or should have known that the radio station to be sold was making various concealments and misrepresentations to the Federal Communications Commission, that the defendants misrepresented to and concealed from the plaintiffs various details

regarding the radio station's ground system, and that the defendants committed fraud when making these misrepresentations in connection with the sale of the radio station's stock.

■ The defendants argue that these allegations do not allege any scienter and therefore that the first claim for relief should be dismissed. The plaintiff responds that the allegations are sufficient, and, alternatively, that it will amend its complaint to state the claim more specifically.

In order to succeed under section 10(b) and rule 10b–5,

> there must be allegations of scienter-intent to deceive, manipulate or defraud. . . . Willful or intentional misconduct, or the equivalent thereof, is essential to recovery . . .

*Utah State University v. Bear, Stearns & Co.*, 549 F.2d 164, 169 (10th Cir. 1977) (citing *Ernst & Ernst v. Hochfelder*, 425 U.S. at 201, 96 S.Ct. at 1384). However, if a complaint alleges that the defendants engaged in "deceptive, fraudulent and manipulative schemes and misrepresentations," and it is clear that "charges go beyond suggestions of mere negligence and contemplate a theory of liability resting upon intentional misconduct," then it is sufficient and should not be dismissed. *Weissbuch v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 558 F.2d 831, 833 (7th Cir. 1977) (citing *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The present complaint alleges more than "suggestions of mere negligence," and therefore should not be dismissed for failure to plead scienter in more detail.

### III. PRIVATE RIGHT OF ACTION UNDER SECTION 17(a)

The defendants' final argument is that any reference in the complaint to section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), should be stricken because there is no private right of action under that statute. In support of this argument,

they cite four cases. Two of them, *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 733 n.6, 95 S.Ct. 1917, 1924, 44 L.Ed.2d 539 (1975) and *Ohio v. Peterson, Lowry, Rall, Barber & Ross*, 651 F.2d 687, 689 n.1 (10th Cir. 1981), specifically declined to decide if there was a private right of action. In *Trussell v. United Underwriters, Ltd.*, 228 F.Supp. 757, 767 (D.Colo.1964), the court found that section 12(2) of the 1933 Act, 15 U.S.C. § 77*l*(2), created a cause of action for violations of section 17(a)(2), but not for section 17(a)(1) or (3). In *Woods v. Homes and Structures of Pittsburg, Kansas, Inc.*, 489 F.Supp. 1270, 1284–85 (D.Kan. 1980), the court noted a split in the circuits on the issue of an implied cause of action, and concluded that none should be allowed when a remedy is also available under section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b). Defendants' cited authorities are therefore far from persuasive.

■ In *Rawson v. Sears Roebuck & Co.*, 530 F.Supp. 776, 777 (D.Colo.1982), I summarized the four-part test for determining whether a federal statute has implied private right of action:

> 1) Is the plaintiff 'one of the class for whose *especial* benefit the statute was enacted'—that is, does the statute create a federal right in favor of the plaintiff?
> 2) Is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one?
> 3) Is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?
> 4) Is the cause of action one traditionally relegated to state law, in any area basically the concern of the states so that it would be inappropriate to infer a cause of action based solely on federal law?

(quoting *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975), emphasis in original). The parties do not dispute that there is a private right of action under Section 10(b) of the 1934 Act.[2] The

---

2. Section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of

existence of a private right of action under section 17(a) of the 1933 Act[3] is therefore only relevant if there is conduct that has damaged a plaintiff that is prohibited by section 17(a) and not by the regulations promulgated under section 10(b). SEC Regulation 10b–5, 17 C.F.R. § 240.10b–5, promulgated under section 10(b), prohibits almost exactly the same conduct that section 17(a) prohibits.[4]

▮ As I noted before, there is a split of authority on the issue of a private right of action under section 17(a) and there is no controlling precedent. It is unclear whether the plaintiff in the present case is alleging that any of the defendants' conduct violated section 17(a) and not rule 10b–5. Finally, neither party has attempted to apply the four-part *Cort v. Ash* test to section 17(a). Under these circumstances I defer ruling on the private right of action issue to allow the parties an opportunity to conduct further discovery. If the parties cannot resolve the issue, and it remains material to the resolution of this case, the defendants can file an appropriate motion for partial summary judgment.

IT IS ORDERED that defendants' motion to dismiss the first claim for relief is denied.

---

the mails, or of any facility of any national securities exchange—

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

3. Section 17(a) of the 1933 Act, 15 U.S.C. § 77q(a), provides:

It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made,

in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

4. Rule 10b–5, 17 C.F.R. § 240.10b–5 (1981), provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.