**In re STORAGE TECHNOLOGY CORPORATION SECURITIES LITIGATION, This Document Relates to All Actions Except Civil Action No. 84–M–1995.**

**Joseph H. LEVIT, et al., Plaintiffs,**

**v.**

**Jesse I. AWEIDA, et al., Defendants.**

**Civ. A. No. 84–M–1981.**

United States District Court,
D. Colorado.

March 19, 1986.

Nicholas E. Chimicles, Greenfield & Chimicles, Haverford, Pa., for plaintiffs.

Gerald L. Bader, Jr., Bader & Cox, Denver, Colo., for plaintiffs and for plaintiffs Scoville and Ryan.

Harry T. Daniels, Hale & Dorr, Boston, Mass., for defendants Officers/Directors.

Charles S. Battles, Jr., Gibson, Dunn & Crutcher, Denver, Colo., for defendants Outside Directors.

James E. Nesland, Ireland, Stapleton, Pryor & Pascoe, P.C., Denver, Colo., for defendant Price Waterhouse.

## MEMORANDUM OPINION AND ORDER

MATSCH, District Judge.

On April 25, 1985, the Judicial Panel on Multidistrict Litigation, pursuant to 28 U.S.C. § 1407, transferred three civil actions pending before the United States District Court for the Northern District of California to this court for coordination or consolidation for pre-trial purposes with twelve civil actions pending before this court. These actions concern the conduct of Storage Technology Corporation ("STC"). One of the cases transferred from California is stayed because STC is a named defendant and it is in bankruptcy. Stipulated Pre-Trial Order No. 1, entered by Judge John P. Moore on January 24, 1985, provided for the organization of plaintiffs' counsel and for the filing of a consolidated class action complaint to supersede all existing complaints in the actions being consolidated. Stipulated Pre-Trial Order No. 2, establishing a briefing schedule, was filed in this court on February 21, 1985, following a status conference.

The consolidated amended complaint was filed on January 31, 1985, signed by Nicholas E. Chimicles as lead counsel and Gerald L. Bader, Jr. as liaison counsel. By its Order for Scheduling Conference dated July 9, 1985, this court consolidated all cases filed in California and Colorado for pre-trial purposes and ordered discovery proceedings stayed. At the scheduling conference on August 22, 1985, Irving Malchman, as counsel for the plaintiff in Civil Action No. 84–M–1995, *Kamerman v. Aweida*, advised the court that he objected to the consolidated amended complaint, and that his client seeks to proceed with the original *Kamerman* complaint, filed October 10, 1984. On August 23, 1985 the court ordered that counsel for all plaintiffs in all of the civil actions consolidated had until September 20, 1985 to disavow the inclusion of their clients' claims within the amended consolidated complaint. All plaintiffs, except Norman Kamerman, adopted the consolidated amended complaint.

The consolidated amended complaint alleges six claims for relief, designated as "counts", the first five under various sections of the Securities Act of 1933 and the Securities Exchange Act of 1934, and the sixth for negligent misrepresentation in connection with the sale of securities. The proposed classes of plaintiffs have not yet been certified.

STC manufactures, sells and services computer peripheral subsystems, particularly disk drive and tape drive systems, for use with computers manufactured by other companies. On October 31, 1984, STC filed a petition in bankruptcy under Chapter 11 of the Federal Bankruptcy Code. STC was not named as a defendant in this action.

Plaintiffs allege that STC officers and directors recklessly concealed and misrepresented STC's financial status and the development of its products through statements of unfounded optimism and failure to reveal their competitors' advantages in the market. Price Waterhouse is alleged to have knowingly or recklessly misrepresented the financial condition of STC. Each of the three groups of defendants (Officers/Directors; Outside Directors; and Price Waterhouse) moved to dismiss, strike, or for a more definite statement.

**COUNT I: SECTION 10(b) OF THE SECURITIES EXCHANGE ACT OF 1934 AND RULE 10b-5**

Defendants assert that this is a mismanagement case in the guise of a securities action. "[S]ection 10(b) was not designed to regulate corporate management nor to prohibit conduct which does not involve manipulation or deception." *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 115 (2d Cir.1982). *See also Santa Fe Industries, Inc. v. Greene*, 430 U.S. 462, 479, 97 S.Ct. 1292, 1304, 51 L.Ed.2d 480 (1977).

■ In a securities fraud action, plaintiff must allege acts indicating an intent to deceive, manipulate, or defraud, and F.R. Civ.P. 9(b) requires that the circumstances constituting such fraud be stated with particularity. *Decker*, 681 F.2d at 115 (citation omitted). *See also Trussell v. United Underwriters, Ltd.*, 228 F.Supp. 757, 774

(D.Colo.1964). In *Decker*, some of defendant's reports presented a false and misleading picture of the company's assets, but its capitalization and debt structure were fully disclosed in its consolidated financial reports. This case differs from *Decker* in that, if plaintiffs' allegations are taken as true, STC misrepresented and failed to disclose adequately its capitalization and debt structure in all of its reports, thereby preventing shareholders from obtaining accurate information concerning the company's financial status.

Defendants further submit that the complaint should be characterized as alleging what some courts have called "fraud by hindsight."

In the typical "fraud-by-hindsight" case, the defendant company has experienced some business misfortune which is ultimately reported in its own periodic reports to stockholders and in the financial press. The publication of this information produces a drop in the market price of the company's stock and many unhappy stockholders. The suit which follows normally alleges that information concerning the impending misfortune or its root causes was omitted from earlier management publications despite the fact that management then knew the information. The omitted material is frequently contrasted with optimistic rhetoric from the pre-misfortune period in connection with an assertion that the earlier publications were false and misleading.

*In re Ramada Inns Securities Litigation*, 550 F.Supp. 1127, 1132 (D.Del.1982); *see also Denny v. Barber*, 576 F.2d 465, 470 (2d Cir.1978).

■ If such situations develop as a result of negligence on the part of management or as a result of unforeseeable events beyond management's control, they are not the result of securities law violations. However, such situations may occur after a deliberate decision of management to cover up facts likely to depress the market in the company's stock. In that case, there may be violations of the federal securities acts.

"If there is any reasonable basis for believing a case may fall into the latter category, discovery should be permitted and the case should go forward; otherwise it should not." *Ramada Inns,* 550 F.Supp. at 1132.

The allegations in this complaint are sufficient to state a claim for relief under section 10(b) and Rule 10b–5. This court will exercise management and control of discovery in this action.

### A. *Aider and Abettor Liability*

■ Both Price Waterhouse and the outside director defendants claim that they cannot be held secondarily liable. Liability as an aider or abettor is established by showing 1) the existence of a securities law violation by the primary party; 2) knowledge of this violation on the part of the aider and abettor; and 3) substantial assistance by the aider and abettor in the achievement of the primary violation. *IIT, International Investment Trust v. Cornfeld,* 619 F.2d 909, 922 (2d Cir.1980).

■ This circuit has expressly held that recklessness satisfies the scienter requirement for primary violations of Rule 10b–5. *Hackbart v. Holmes,* 675 F.2d 1114, 1117 (10th Cir.1982). Where an alleged aider and abettor owes a fiduciary duty to the defrauded party, recklessness also satisfies the scienter requirement for secondary liability. *Cornfeld,* 619 F.2d at 923 (quoting *Rolf v. Blyth, Eastman Dillon & Co., Inc.,* 570 F.2d 38, 47–48 (2d Cir.), *cert. denied,* 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978)). *See also Woodward v. Metro Bank of Dallas,* 522 F.2d 84, 97 (5th Cir. 1975); *Sundstrand Corp. v. Sun Chemical Corp.,* 553 F.2d 1033, 1044–45 (7th Cir.), *cert. denied,* 434 U.S. 875, 98 S.Ct. 225, 54 L.Ed.2d 155 (1977). "Moreover, one who aids and abets a fraudulent scheme may be held accountable even though his assistance consists of mere silence or inaction." *Kerbs v. Fall River Industries, Inc.,* 502 F.2d 731, 740 (10th Cir.1974).

■ Plaintiffs have pleaded the existence of wrongful acts and since the defendant directors are fiduciaries, a claim of recklessness is sufficient to state a claim against them.

Plaintiffs also allege that Price Waterhouse certified STC's financial statements which were materially false and misleading and did not present STC's true financial position. It is further alleged that Price Waterhouse certified such financial statements with knowledge of or reckless disregard for the insufficiency of its auditing procedures.

■ Although the accountant-client relationship is not generally regarded as a fiduciary one, even in the absence of a fiduciary duty, recklessness will satisfy the scienter requirement where there was foreseeable reliance upon the defendant's actions. *Fund of Funds, Ltd. v. Arthur Andersen & Co.,* 545 F.Supp. 1314, 1356 (S.D. N.Y.1982). "An accountant may be liable as an aider and abettor if it knows, or is reckless in not knowing, that its client has committed a primary violation, and it substantially aids the client in the overall enterprise." *SEC v. Seaboard Corp.,* 677 F.2d 1301, 1312 (9th Cir.1982). The allegations are sufficient to state a claim against Price Waterhouse for violations of section 10(b) and Rule 10b–5.

Defendant Price Waterhouse asks that if this court finds one or more of plaintiffs' allegations to be adequate, all allegations not adequately pleaded be stricken from the complaint. It is an unnecessary waste of judicial resources to review all allegations and strike those that may be superfluous when the court has already determined that a claim has been stated.

### B. *Differentiation of Individual Defendant Directors*

■ In certain circumstances, the identification of corporate defendants without association of specific misstatements with individual officers and/or directors does not violate the pleading requirements of F.R.Civ.P. 9(b). Individual identifications are unnecessary when "plaintiff's allegations with respect to th[e] defendants involve misstatements or omissions in documents—annual reports, financial state-

ments—that may be presumed to entail the collective actions of the directors, officers, and the accountant, in some cases." *Somerville v. Major Exploration, Inc.*, 576 F.Supp. 902, 911 (S.D.N.Y.1983). The *Trussell* court commented:

> It is obvious that a plaintiff may not be privy to the workings of a group of defendants who have acted in concert to defraud him, but he can at least identify the particular defendants who allegedly dealt directly with him, and he can describe the circumstances under which particular defendants dealt directly with him. Under Rule 9(b) the plaintiff can not be required to allege with particularity the manner in which individual defendants acted in concert....

*Trussell*, 228 F.Supp. at 774. Plaintiffs have alleged the individual defendants responsible for making certain oral public statements or written representations attributable to them. The remaining individuals are alleged to have acted in concert to defraud the plaintiffs through various statements and reports. Plaintiffs' allegations are sufficient to provide fair notice of the claims asserted and allow defendants to answer the complaint.

### C. *Fraud on the Market*

Plaintiffs believe that their assertions of reliance upon the integrity of the market are sufficient to state a claim under the "fraud on the market" theory. Defendants believe that plaintiffs' Rule 10b–5 claim must be dismissed because of the failure to allege actual reliance upon STC's purportedly false and misleading statements or representations.

Generally in a misrepresentation case under Rule 10b–5, a plaintiff must establish "that in connection with the purchase or sale of a security, the defendant, with scienter, made a false representation of a material fact upon which the plaintiff justifiably relied to his or her detriment." *Zobrist v. Coal-X, Inc.*, 708 F.2d 1511, 1516 (10th Cir.1983). Whether the plaintiff must establish actual reliance, however, may depend upon the facts in question. *Holdsworth v. Strong*, 545 F.2d 687, 695 (10th

Cir.1976), *cert. denied*, 430 U.S. 955, 97 S.Ct. 1600, 51 L.Ed.2d 805 (1977).

The Tenth Circuit demonstrated its understanding and acceptance of the economic bases for the fraud on the market theory in *T.J. Raney & Sons, Inc. v. Fort Cobb, Okl. Irr. Fuel Authority*, 717 F.2d 1330, 1332–33 (10th Cir.1983), *cert. denied*, 465 U.S. 1026, 104 S.Ct. 1285, 79 L.Ed.2d 687 (1984). The holding in *Raney*, however, was confined to the limited situation involving newly issued securities traded on an undeveloped market and did not determine whether the fraud on the market theory should apply to the open market context.

■ The fraud on the market theory allows a plaintiff to rely on the integrity of the market rather than requiring direct reliance on the defendant's conduct. It is grounded on the assumption that the market price reflects all known material information and that material misinformation will cause the artificial inflation or deflation of the market price. This theory "finds its greatest justification when applied to class actions alleging fraudulent misrepresentations or omissions that affected security prices on a developed open market." *Lipton v. Documation, Inc.*, 734 F.2d 740, 745 (11th Cir.1984). *See also Raney*, 717 F.2d at 1332 ("majority of cases which accept some form of fraud on the market theory have concerned securities traded on impersonal, actively traded markets."). In the open market it is reasonable to assume that misinformation disseminated into the marketplace will affect the market price. Therefore, proof of subjective reliance on particular misrepresentations is unnecessary to establish a Rule 10b–5 claim. The reasoning was best expressed by the Ninth Circuit in *Blackie v. Barrack*, 524 F.2d 891 (9th Cir.1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976):

> Proof of reliance is adduced to demonstrate the causal connection between the defendant's wrongdoing and the plaintiff's loss. We think causation is ade-

quately established in the impersonal stock exchange context by proof of purchase and of the materiality of misrepresentations, without direct proof of reliance. Materiality circumstantially establishes the reliance of some market traders and hence the inflation in the stock price—when the purchase is made the causational chain between defendant's conduct and plaintiff's loss is sufficiently established to make out a prima facie case.

*Id.* at 906.

■ This court accepts the fraud on the market theory in the open market context and applies it in this case. The complaint sets forth allegations of a continuing fraud that deceived the investing public and artificially inflated the price of STC securities on the open market. Therefore, plaintiffs have satisfied the reliance requirement for a Rule 10b–5 claim.

## COUNTS II, III & IV: SECTIONS 11 AND 15 OF THE 1933 ACT

### A. *Section 11(a) of the Securities Act of 1933*

Counts II and III contain allegations involving section 11 of the Securities Act of 1933. 15 U.S.C. § 77k. Section 11(a) provides a cause of action for "any person acquiring" securities sold upon a registration statement which contains an untrue statement or omission of a material fact. *In re Penn Central Securities Litigation,* 357 F.Supp. 869, 877 (E.D.Penn.1973), *aff'd,* 494 F.2d 528 (3rd Cir.1974). Plaintiffs' allegations in Count II state section 11 violations in regard to several registration statements for employee stock purchase plans. This claim includes plaintiffs who contributed funds to the company to purchase STC stock through the company's 1982, 1983, and 1984 Employee Stock Option Plans and/or Thrift Plans.

■ In Count III plaintiffs state that STC issued $100 million of 11⅝% notes due in 1993 pursuant to a fraudulent prospectus and registration statement. However, they have failed to allege that any of the named plaintiffs purchased such notes. Plaintiffs who cannot assert a claim individually cannot assert that claim on behalf of a class. *Greenstein v. Paul,* 275 F.Supp. 604, 605 (S.D.N.Y.1967), *aff'd,* 400 F.2d 580 (2d Cir.1968). Accordingly, since section 11 covers only persons acquiring securities pursuant to the allegedly false registration statement, 15 U.S.C. § 77k, plaintiffs have failed to allege facts sufficient to state a claim upon which relief may be granted in Count III. F.R.Civ.P. 12(b)(6).

### B. *Statute of Limitations*

Section 13 of the Securities Act of 1933 requires that a claim for relief under section 11 be "brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence.... In no event shall any such action be brought to enforce a liability created under section 11 ... more than three years after the security was bona fide offered to the public...." 15 U.S.C. § 77m. The outside director defendants move for a more definite statement arguing that the plaintiffs have inadequately pleaded the statute of limitations.

■ Plaintiffs have pleaded that this action was commenced less than three years after the securities were first bona fide offered to the employees and within one year after discovery of the untrue statements and omissions. They have asserted in their memorandum that the plaintiffs could not have discovered the facts which were concealed and misrepresented by the defendants until October, 1984, when STC announced it would report a loss of more than $20 million for the third quarter of 1984 and that it had fired 1500 employees. The pleading is sufficient to withstand a motion to dismiss. Whether plaintiffs should have made such a discovery in the exercise of reasonable diligence at an earlier date is not a question properly disposed of in a motion to dismiss or for summary judgment.

## C. Control Person Liability

The outside director defendants argue that they are not control persons within the meaning of section 15 of the Securities Act of 1933. Section 15 imposes joint and several liability upón "[e]very person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under section 11 or 12 ... unless the controlling person had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability of the controlled persons is alleged to exist." 15 U.S.C. § 77o. Section 11 imposes liability for false registration statements upon every person who signed the registration statement and every person who was a director. 15 U.S.C. § 77k.

■■■■ Plaintiffs have alleged that the moving defendants were directors of STC. In addition, plaintiffs have listed the directors who signed the subject registration statements. "The individual defendants, by virtue of their positions as directors ... clearly possessed the 'power to direct or cause the direction of the management and policies' ... through actions as directors, thus these defendants are *prima facie* controlling persons of [the corporation]." *American General Ins. Co. v. Equitable General Corp.*, 493 F.Supp. 721, 752 (E.D. Va.1980) (citation omitted). *Cf. Savino v. E.F. Hutton & Co.*, 507 F.Supp. 1225, 1243 (S.D.N.Y.1981) ("control by status" sufficient under § 20(a) ). Accordingly, plaintiffs have properly pleaded the moving defendants as controlling persons. The defendants may escape liability only by proving that they had no knowledge of or reasonable grounds to believe in the existence of the facts which constitute the alleged violation of section 11.

## COUNT V: SECTION 17(a) OF THE 1933 ACT

Whether a claim for relief should be implied from section 17(a) has not yet been decided by the Supreme Court and the circuit courts are split on the issue. This court has previously held that no private right of action exists under section 17(a). *Heard v. E.F. Hutton*, No. 75–M–362 (D.Colo. July 31, 1975).

The history of this issue in the Tenth Circuit was reviewed by Judge Moore in *Masri v. Wakefield*, 602 F.Supp. 404, 405– 06 (D.Colo.1983) (issue certified for interlocutory appeal). In 1979, Chief Judge Finesilver pronounced that "[b]ased generally upon *Trussell v. United Underwriters, Ltd.*, 228 F.Supp. 757 (D.Colo.1964), this court and other courts within this district have uniformly held that § 17 of the 1933 Act creates no private cause of action." *Ohio v. Peterson, Lowry, Rall, Barber & Ross*, 472 F.Supp. 402, 404 n. 3 (D.Colo. 1979), *aff'd*, 651 F.2d 687 (10th Cir.1981). On appeal, the Tenth Circuit expressed "considerable doubt" as to whether there exists an implied private right of action under section 17(a). *Ohio v. Peterson, Lowry, Rall, Barber & Ross*, 651 F.2d 687, 689 n. 1 (10th Cir.), *cert. denied*, 454 U.S. 895, 102 S.Ct. 392, 70 L.Ed.2d 209 (1981).

In *Noland v. Gurley*, 566 F.Supp. 210 (D.Colo.1983), where a plaintiff had alleged violations of both sections 17(a) and 10(b), Judge Kane allowed "further discovery to determine whether the conduct that damaged the plaintiff was violative of section 17(a) and not the regulations promulgated under section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b)." *Id.* at 214. *See also Philbosian v. First Financial Securities Corp.*, 550 F.Supp. 61, 62–63 (D.Colo.1982) (Kane, J.); *Sterling Recreation Organization Co. v. Segal*, 537 F.Supp. 1024, 1028– 29 (D.Colo.1982) (Kane, J.). In light of Judge Kane's decisions the plaintiffs ask to be allowed to conduct their discovery on all issues so that the court may make a decision on a full record. The more efficient course, however, is to dismiss plaintiffs' section 17(a) cause of action.

Most of the cases creating a private cause of action have done so by expanding upon Chief Judge Friendly's concurring opinion in *SEC v. Texas Gulf Sulphur Co.*,

401 F.2d 833 (2d Cir.1968), *cert. denied,* 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969). In dicta, while discussing the origin of Rule 10b–5, Judge Friendly stated that although he had considerable doubt as to whether a private remedy under 17(a) was intended, "[o]nce it had been established ... that an aggrieved buyer has a private action under § 10(b) of the 1934 Act, there seemed little practical point in denying the existence of such an action under § 17...." *Id.* at 867 (Friendly, J., concurring). That was true at the time because section 10(b) was thought to be broader than section 17. In *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), however, the Supreme Court limited Rule 10b–5 by requiring "scienter" as an essential element of the plaintiff's cause of action under Rule 10b–5.

By contrast, in an SEC enforcement action, *Aaron v. SEC,* 446 U.S. 680, 695–97, 100 S.Ct. 1945, 1954–56, 64 L.Ed.2d 611 (1980), the Supreme Court determined that section 17(a) requires scienter under 17(a)(1), but not under 17(a)(2) or 17(a)(3), thus making an implied private action under section 17(a) an attractive alternative to Rule 10b–5. Implying a private cause of action under section 17(a) would effectively allow plaintiffs to circumvent the scienter requirement of Rule 10b–5 imposed by the Supreme Court.

▇ Courts which have analyzed the issue under Justice Brennan's four-part test for determining when a private remedy should be implied, *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975), have refused to imply a private action. *See e.g., Landry v. All American Assurance Co.,* 688 F.2d 381, 387–91 (5th Cir.1982). An implied cause of action under section 17 would interfere with the legislative scheme of the Act. Section 11 prohibits false statements and omissions in registration statements, and section 12(2) protects purchasers from false statements or omissions in oral or written communications. A private section 17(a) action would impose sanctions for the same violations.

Furthermore, as previously discussed, the recognition of a private cause of action under section 17(a) would frustrate the restrictions placed upon Rule 10b–5 by the Supreme Court. Accordingly, this court will not imply a private cause of action under section 17(a).

## COUNT VI: COMMON LAW NEGLIGENT MISREPRESENTATION

▇ While federal courts have the power to hear state claims which derive from a common nucleus of operative facts, it is also clear that the exercise of pendent jurisdiction is within the discretion of the trial court. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). This court has previously examined the criteria to be considered in the exercise of that discretion in *Kerby v. Commodity Resources Inc.,* 395 F.Supp. 786 (D.Colo. 1975). In that case it was determined that "litigation brought under federal securities laws in the federal court should be limited to the claims for relief provided under those laws and that state claims should remain in the state courts in the absence of a showing of unfairness to the parties." *Id.* at 790–91.

▇ There are several reasons why this court finds a consistent result in this case. First, under the state claim plaintiffs have asked for punitive damages and attorneys' fees which are not allowed under the federal securities laws. See *De Haas v. Empire Petroleum Co.,* 435 F.2d 1223, 1229–32 (10th Cir.1970), and *Young v. Taylor,* 466 F.2d 1329, 1337–38 (10th Cir.1972), respectively.

Another consideration rests with the elements of the claim itself. To prove a claim of negligent misrepresentation, each individual plaintiff will have to prove actual reliance on some specific statement or omission of material fact. In addition to the cumbersome burden of proof involved and confusion for the jury, it would be unwise to certify a class if this claim were to remain. Such certification would raise questions of fact and law under the laws of each state where stock was purchased, and

thus common issues would not predominate over individual ones. *Beebe v. Pacific Realty Trust,* 99 F.R.D. 60 (D.Or.1983); *McFarland v. Memorex Corp.,* 96 F.R.D. 357 (N.D.Cal.1982).

Further, negligent misrepresentation is not an area of settled law. In a recent opinion by the District Court for the Southern District of New York, a negligent misrepresentation claim was dismissed in a similar situation based on New York and Connecticut law. *In re Coleco Securities Litigation,* 591 F.Supp. 1488 (S.D.N.Y. 1984). The court reasoned that such a claim "proceeds on behalf of a classically 'faceless or unresolved class of persons,' prospective investors, and must be dismissed under the reasoning of *Ultramares* [*Corp. v. Touche,* 255 N.Y. 170, 174 N.E. 441 (1931)] and *[White v.] Guarente* [43 N.Y.2d 356, 401 N.Y.S.2d 474, 372 N.E.2d 315 (1977)].... Plaintiffs have put forward no support for an extension of director's liability to the investing community, nor are we aware of any." *Id.* at 1493.

In light of the aforementioned considerations, this court exercises its discretion by denying pendent jurisdiction over plaintiffs' negligent misrepresentation claim.

Upon the foregoing, it is

ORDERED, that defendants' motions to dismiss, strike, or for a more definite statement are denied as to Counts I, II and IV, and it is

FURTHER ORDERED, that Counts III and V are dismissed with prejudice, and it is

FURTHER ORDERED, that Count VI is dismissed without prejudice, and it is

FURTHER ORDERED, that the stay of discovery is vacated and the parties may proceed with discovery at this time only on the issue of class certification, and it is

FURTHER ORDERED, that plaintiffs shall have to and including June 2, 1986 within which to file consolidated motions for class certification.